565 So.2d 1378 (1990)
In re the Marriage of Mary Nell DIXON, Formerly Known As Nell Melton, John Dixon and Bonnie Mae Dixon, Appellants,
v.
Ronald Michael MELTON (Deceased) and Ronald H. Melton and Frances C. Melton, Appellees.
No. 90-996.
District Court of Appeal of Florida, First District.
July 31, 1990.
Rehearing Denied August 30, 1990.
*1379 Dixie D. Powell, Powell, Powell & Powell, Crestview, for appellant, adoptive parents.
Marva A. Davis, Quincy, for appellant, natural mother.
Larry D. Simpson, Davis, Judkins & Simpson, Tallahassee, for appellees.
WENTWORTH, Judge.
Appellants are the natural mother of a child, M.L.M., and the child's maternal grandparents who seek review of an order in the circuit court for Leon County enjoining movement of the child out of the second judicial circuit except as provided in the order. We affirm, finding the trial court did not abuse its discretion in granting the temporary injunction without requiring the posting of a bond.
M.L.M. was the only child of a marriage between appellant Mary Nell Dixon and Ronald M. Melton, who died in 1986. Appellees, the paternal grandparents of the child, were granted visitation rights pursuant to the final judgment of dissolution in Leon County in 1985. The ongoing controversy between these parties is the subject of another recent appeal now pending here from an order of the circuit court for Okaloosa County vacating the child's adoption, and has already involved two prior appeals to this court: Dixon v. Melton, 515 So.2d 1309 (Fla. 1st DCA 1987); In the Interest of M.L.M., 528 So.2d 54 (Fla. 1st DCA 1988).
Subsequent to Ronald Melton's death, the following events occurred:

November 1986: The Meltons were granted intervenor status in the original 1985 Leon County dissolution proceeding between the parties to enforce the visitation rights granted to them in the final judgment of dissolution.

Late December 1986: The natural mother received notice of a rescheduled hearing, but failed to appear. The court ordered the Meltons to take their visitation with the child at her current address in Texas, but neither the mother nor child could be located.

January 1987: The Meltons filed a motion for contempt directed to the natural mother, who did not appear on a show cause order. Hearing was rescheduled for March 1987.

*1380 Late March 1987: Four days prior to the rescheduled contempt/show cause hearing in Leon County, the maternal grandparents signed a petition to adopt the child in Okaloosa County, and the natural mother signed a consent to the adoption. At the rescheduled hearing in Leon County, the mother did not appear and a warrant for her arrest was issued. The petition for adoption of the child was then filed in Okaloosa County.

April 1987: The natural mother contacted the Meltons and agreed to a visitation schedule. The contempt arrest warrant was withdrawn. The Meltons filed, in Leon County, a motion to establish a visitation schedule. Hearing was set for May 26th. The mother's response to the motion agreed to have the schedule commence in July.

May 26: Hearing was held on establishment of a visitation schedule, with all parties present, in Leon circuit court. The mother reiterated her request that visitation commence in July. The Leon circuit court so ordered, being unaware of pending adoption proceedings in Okaloosa County.

May 27: Final adoption hearing was held in Okaloosa County, the court being unaware of the previous day's proceedings in Leon County.

June 1987: The Meltons were notified that a final judgment of adoption of the child had been entered in Okaloosa County.

Late July 1987: The Meltons filed a second motion for contempt in the circuit court for Leon County due to the natural mother's failure to abide by the 5/26/87 visitation order. The mother produced a copy of the final judgment of adoption with the names of the adoptive parents obliterated, and she refused to reveal their names. The court found good cause for disclosing the names of the adoptive parents, held the natural mother in contempt, and directed the clerk of the Okaloosa circuit court to produce the files relating to the adoption for inspection by the Meltons. This court granted the mother's petition for a writ of prohibition as to the disclosure, and reversed the order finding the natural mother in contempt. Dixon v. Melton, supra. This court later affirmed an order in the adoption proceeding, granting intervention to the Meltons and requiring that the name of the adoptive parents be revealed to them.

February 19, 1990: The Meltons filed, in the Leon circuit court, an "Intervenors Motion for Contempt and Sanctions" and "Intervenors Emergency Motion for an Order Restricting Removal of Minor Child from Leon County, Florida."

March 5, 1990: The Leon circuit court held a second hearing on the emergency motion and entered its final order enjoining the movement of the minor child until further order, dated nunc pro tunc February 21, 1990, the date of first hearing on the motion.

March 23, 1990: The formal order vacating the adoption of the child was entered in the Okaloosa circuit court, back dated to February 7, 1990.
Appellants are correct in asserting that section 61.13(2)(b)2.c., Florida Statutes, does not permit an order restricting the movement of a minor child solely to "facilitate" a right of visitation by grandparents. Fisher v. Fisher, 390 So.2d 142 (Fla. 3d DCA 1980). Cf. Section 752.01(1), Florida Statutes. However, additional facts must be considered in determining whether the court's order was entered "solely" for the purpose of permitting visitation by the paternal grandparents. Insofar as the injunction relates to the maternal grandparents, it can be read as an order restricting them from improperly removing the child from the court's jurisdiction when they had no enforceable right to do so, absent adoption. And, it seems clear that the natural mother's actions in moving the child and refusing to disclose the child's location over the past three years have been intended to frustrate the Meltons' rights to visitation, which were granted in the judgment of dissolution between the parties in 1985. The natural mother has failed to appear at least four times after being ordered to do so by the Leon circuit *1381 court. She has also refused to produce the child when so ordered by the court.
Under the circumstances, the injunction was not entered "solely" for the purpose of permitting the Meltons to visit with the child. The record indicates that the court's purpose in entering the injunction was to preserve the integrity of the court's process pending resolution of the adoption issues now on appeal in the companion case. This was an appropriate reason for entry of the appealed order, which we construe as extending the injunction for a period no longer than is necessary to finally resolve the adoption issues.
Appellants also argue that the Meltons did not show the likelihood of success on the merits of their argument for visitation rights with the child. However, at the time when the temporary injunction was entered, the adoption of the minor child by the maternal grandparents had been vacated by the Okaloosa circuit court. The court order (or series of orders) granting the Meltons rights of visitation and directing the mother to act in accordance with those rights were still extant. Therefore, in pursuing a temporary injunction to enforce those rights, the Meltons clearly showed a likelihood of success on the merits. They were also able to show the existence of irreparable harm should they not be allowed to visit with their granddaughter. The trial court at dissolution found that such visitation was in the best interests of the child. And at the time of the injunction, the Meltons' right to visitation had been frustrated by three years' efforts by the mother. This supports findings of irreparable injury to both the grandparents and the child, and the lack of an adequate remedy at law to effectuate the visitation. As to the final test, that the injunction be in the public interest, section 61.13(2)(b)2.c. and chapter 752, Florida Statutes, clearly embody a legislative finding that grandparental visitation, when in the best interests of the child, is also in the public interest.
Under the F.R.C.P. 1.610(b), a bond securing payment of costs and damages is not required where the injunction is "issued solely to prevent ... abuse of a natural person." We find merit in appellees' contention that "abuse" in this rule should be read generally as defined in statutory proceedings relating to juveniles, chapter 39, Florida Statutes. There, the term includes "any willful act that results in any ... mental ... injury that causes or is likely to cause the child's physical, mental, or emotional health to be significantly impaired." s. 39.01(2), Florida Statutes. Because this court has recognized the urgency with which proceedings relating to the child's visitation with her grandparents must be resolved, see In the Interest of M.L.M., supra, at 56, there necessarily must be implicit harm to the child in continuing to keep her from those grandparents. A bond was therefore unnecessary, since the injunction was issued to prevent the continued willful deprivation of contact.
As mentioned above, the Okaloosa circuit court's final order vacating the adoption by the maternal grandparents was effective as of February 7, 1990. Although the order was not rendered or filed in the Okaloosa circuit court until March 23, nevertheless, the judge in that proceeding effectuated his intent to have the order become effective as of 2/7/90, which was also the date of a letter to the parties indicating his intent to vacate the adoption. An appeal has been taken of that order. Whether that appeal is timely, or which date is the date of rendition, is not at issue in this case. Our concern is whether the adoption of the child by the maternal grandparents was valid at the time of the entry of injunction by the Leon circuit court. Clearly, the adoption was not in force at that time. The circuit court for Leon County therefore had authority to enforce the only subsisting court order at that time, i.e. the final judgment of dissolution granting the Meltons a right to visitation with their grandchild.
Affirmed.
NIMMONS and ALLEN, JJ., concur.